UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMANUEL DANGELLO CESVETTE,<br><br>        Petitioner,<br><br>    v.<br><br>ANTONE MONIZ, Superintendent,<br>Plymouth County Correctional Facility,<br>DAVID WESLING, Acting Field Office<br>Director, DAVID VENTURELLA, Acting<br>Director, U.S. Immigration and Customs<br>Enforcement, MARKWAYNE MULLIN,<br>U.S. Secretary of Homeland Security,<br>and TODD BLANCHE, U.S. Acting<br>Attorney General,<br><br>        Respondents. | Civil Action No. 1:26-cv-12662-AK<br><br>PETITIONER'S MOTION TO ENFORCE<br>THE COURT'S JUNE 18, 2026, HABEAS<br>JUDGMENT AND FOR IMMEDIATE<br>RELEASE<br><br>INCORPORATED MEMORANDUM OF<br>LAW |

**PETITIONER'S MOTION TO ENFORCE THE COURT'S JUNE 18, 2026
HABEAS JUDGMENT AND FOR IMMEDIATE RELEASE**

Petitioner Emanuel Dangello Cesvette respectfully moves, pursuant to 28 U.S.C. §

2241 and this Court's inherent authority to enforce its own judgments, to enforce the Court's

June 18, 2026 Judgment granting his petition for a writ of habeas corpus and to order his

immediate release from the custody of U.S. Immigration and Customs Enforcement ("ICE").

On June 18, 2026, this Court held that Mr. Cesvette's detention is governed by the

discretionary framework of 8 U.S.C. § 1226(a), that his continued detention without a bond

hearing was unlawful, and ordered Respondents to conduct a § 1226(a) bond hearing within

ten calendar days. *Cesvette v. Moniz*, No. 1:26-cv-12662-AK, slip op. at 3 (D. Mass. June

18, 2026).  The Court further enjoined Respondents from denying bond on the ground that

Mr. Cesvette is detained under 8 U.S.C. § 1225(b)(2) and ordered the parties to file a status

report stating whether bond was granted and, if denied, the reasons therefor.  *Id.*

An Immigration Judge held a hearing on June 25, 2026, and denied bond, finding Mr. Cesvette to be a danger to the community by clear and convincing evidence.  The sole basis for that finding was a set of Connecticut criminal charges—assault in the third degree, disorderly conduct, and unlawful restraint in the second degree—every one of which had been dismissed in full by the Connecticut Superior Court on May 20, 2026, more than a month before the hearing was held. There is no conviction of record, and no neutral adjudicator has ever found that Mr. Cesvette engaged in the underlying conduct.

A bond hearing that produces a dangerousness finding resting entirely on dismissed, unproven charges is not the constitutionally adequate § 1226(a) hearing this Court ordered. The First Circuit requires the Government to prove dangerousness by clear and convincing evidence, *Hernandez-Lara v. Lyons*, 10 F.4th 19, 35 (1st Cir. 2021), and dismissed charges cannot carry that burden. The denial likewise fails the Administrative Procedure Act's prohibition on arbitrary and capricious agency action. See 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Because this Court retains jurisdiction to enforce its judgment, and because release is the typical remedy for unlawful executive detention, *Munaf v. Geren*, 553 U.S. 674, 693 (2008), the Court should order Mr. Cesvette's immediate release or, in the alternative, conduct a de novo bond hearing.

### FACTS

Mr. Cesvette is a national of Jamaica who entered the United States on June 24, 2022, and was released on a grant of parole two days later.  *See* Petition for Writ of Habeas Corpus, No. 1:26-cv-12662-AK, Doc. No. 1 ("Pet.") ¶¶ 3, 25. He has resided in this country for four

years.   During that time, he applied for asylum, received work authorization, maintained steady employment, paid his taxes, and studied to become a certified nursing assistant.  *Id.* ¶¶ 4, 26–27. Mr. Cesvette married a United States citizen, who has filed a Form I-130 petition on his behalf.  He is the father of two United States citizen children.  *Id.* ¶¶ 2, 26.  Throughout his time on parole, he complied fully with every ICE reporting requirement.  *Id.* ¶ 5.

On February 19, 2026, ICE arrested Mr. Cesvette and served him with a warrant of arrest and a notice terminating his parole.  *Id.* ¶¶ 7, 11.  He has been detained at the Plymouth County Correctional Facility ever since.  *Id.* ¶ 17. On June 18, 2026, this Court granted Mr. Cesvette's petition for a writ of habeas corpus.  Following the analysis of *Amaya Sanchez v. Moniz*, No. 25-CV-12806-AK, slip op. at 5–8 (D. Mass. Oct. 10, 2025), the Court held that Mr. Cesvette's arrest and detention within the United States are governed by § 1226(a)'s discretionary framework, that he is entitled to a bond hearing, and that his detention without one was unlawful.  *Cesvette*, slip op. at 3.  The Court ordered Respondents to provide a § 1226(a) bond hearing within ten calendar days, enjoined them from denying bond on the basis that he is detained under § 1225(b)(2), and ordered a status report stating whether bond was granted and, if denied, the reasons for the denial.  *Id.*

The Connecticut charges pending when Mr. Cesvette was arrested—assault in the third degree in violation of Conn. Gen. Stat. § 53a-61, disorderly conduct in violation of Conn. Gen. Stat. § 53a-182, and unlawful restraint in the second degree in violation of Conn. Gen. Stat. § 53a-96—were dismissed in their entirety by the Connecticut Superior Court on May 20, 2026.  See Certified Disposition, *State v. Cesvette*, No. F02B-CR25-0365581-S

(Conn. Super. Ct. May 20, 2026) (Exhibit A). No criminal matter remains pending against Mr. Cesvette in any jurisdiction, and he has no conviction.  Pet. ¶ 7.

The Immigration Judge held a bond hearing on June 25, 2026, and denied bond, finding Mr. Cesvette to be a danger to the community by clear and convincing evidence and concluding that no alternative to detention would ensure the safety of the community. Respondents' Status Report at 1, Doc. No. 12.  Respondents thereafter moved this Court to dismiss the action as resolved.  *Id.*

## **ARGUMENT**

This motion presents a narrow but consequential question: whether Respondents complied with this Court's Judgment by providing the meaningful § 1226(a) bond hearing that due process requires. They did not. The Court ordered a hearing at which the Government would bear the burden of justifying Mr. Cesvette's continued civil detention under the standards governing discretionary detention. The resulting denial instead rested entirely on criminal charges that had already been dismissed in full, without any conviction, pending prosecution, or adjudicated finding that the alleged conduct occurred. That proceeding did not cure the constitutional defect this Court identified; it reproduced it in another form. Because this Court retains authority to enforce its judgment, and because continued detention on this record cannot be reconciled with due process or reasoned agency decision making, the Court should enforce its prior order and direct Mr. Cesvette's immediate release.

**I.      THIS COURT RETAINS JURISDICTION TO ENFORCE ITS JUDGMENT AND TO REVIEW WHETHER THE COURT-ORDERED BOND HEARING WAS CONSTITUTIONALLY ADEQUATE.**

A federal court that grants habeas relief retains jurisdiction to enforce its judgment and to ensure the government's compliance with the conditions of the writ. *See Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1113–14 (S.D. Cal. 2008). Where a petitioner "has successfully secured a conditional release," he "is entitled to the habeas court's continuing supervision to ensure the government's compliance with the court's order"; otherwise "the habeas court's grant of relief is meaningless." *Id.* at 1113. Requiring a new and independent petition each time the Government fails to comply "would be burdensome and inefficient." *Id.* It will likely end in the same result, because of current administration policy of enforcement.

Courts have enforced court-ordered bond hearings on precisely this basis. Determining "whether all of the conditions contained in the bond order were followed—that is, whether [the petitioner] received the due process to which he was entitled"—is an exercise of the court's enforcement authority, not a forbidden reweighing of the agency's discretionary judgment. *Mathon v. Searls*, 623 F. Supp. 3d 203, 211 (W.D.N.Y. 2022). Federal courts "possess continuing jurisdiction to enforce grants of habeas relief," and a summary bond order that disregards the conditions of a prior habeas grant does not satisfy that grant. *See Diallo v. Raycraft*, No. 1:26-CV-423, 2026 WL 1487286, at *3 (S.D. Ohio May 18, 2026), citing Gall v. Scroggy, 603 F.3d 346 (6th Cir. 2010). Title 8 U.S.C. § 1226(e) presents no obstacle.   It bars review only of "the Attorney General's discretionary judgment"; it "does not preclude . . . habeas jurisdiction over constitutional claims or

questions of law." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 118 (D.R.I. 2025); *citing Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (*quoting Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). District courts retain jurisdiction to review a bond denial "where that bond denial is challenged as legally erroneous or unconstitutional," including whether the Immigration Judge "applied the constitutionally mandated burden of proof." *Id.* Mr. Cesvette does not ask the Court to reweigh discretionary factors; he contends the denial rests on legally insufficient evidence and violates due process—contentions that fall comfortably within the scope of § 2241.

The Court's remedial authority is equally broad.  A habeas court may "dispose of [a petition] as law and justice require," 28 U.S.C. § 2243, and it enjoys "broad discretion . . . in fashioning the judgment granting relief."  *Mathon*, 623 F. Supp. 3d at 211. Because "[h]abeas is at its core a remedy for unlawful executive detention," "[t]he typical remedy … is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That should be the case here.

## II.    THE JUNE 25, 2026, BOND HEARING DID NOT COMPLY WITH THIS COURT'S JUDGMENT AND VIOLATED DUE PROCESS.

The bond hearing this Court ordered was required to satisfy due process.  It did not. The Immigration Judge's dangerousness finding rests entirely on criminal charges that had been dismissed more than a month before the hearing—a basis that is both constitutionally inadequate and arbitrary and capricious under the APA.

### A.    *The Dangerousness Finding Cannot Satisfy the Fifth Amendment.*

To continue detaining a noncitizen under § 1226(a), "due process requires the government to . . . prove by clear and convincing evidence that [he] poses a danger to the

community." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 35 (1st Cir. 2021); *see also Brito v. Garland*, 22 F.4th 240, 253–54 (1st Cir. 2021). That standard derives from the settled constitutional rule that regulatory detention on dangerousness grounds is permissible when the Government proves "an identified and articulable threat to an individual or the community." *United States v. Salerno*, 481 U.S. 739, 751 (1987). On habeas review, the question is "whether the evidence that the [Immigration Judge] relied on . . . could—as a matter of law—establish" the finding. *Garcia v. Hyde*, 817 F. Supp. 3d at 119.  It could not. A noncitizen's removability "bears no relation to a detainee's dangerousness," and a danger finding must therefore "begin with the government offering a reason to find a particular person dangerous." *Hernandez-Lara*, 10 F.4th at 35.  Here, the only reason available was the dismissed Connecticut charges.

Unadjudicated criminal charges may be considered only if they are "probative and specific." *Garcia*, 817 F. Supp. 3d at 120.  A bare arrest does not suffice: sole reliance on an arrest record, where the underlying facts do not establish that the noncitizen committed the charged offense, is "not 'probative and specific'" and "violate[s] [the] due process rights" of the detainee. *Id.* Dismissed charges are constitutionally weaker still. The prosecuting authority abandoned them, and no tribunal has ever made any finding—let alone a finding by clear and convincing evidence—that the underlying conduct occurred.  See Pet. ¶ 7; Certified Disposition, *State v. Cesvette*, No. F02B-CR25-0365581-S. (Exhibit A)

Due process additionally requires that dangerousness like flight be assessed on a "current" basis. *Garcia*, 817 F. Supp. 3d at 120 (Federal courts have also held that the process due even to excludable [noncitizens] requires an opportunity for an evaluation of the

individual's current threat to the community and his risk of flight.)  Reliance on stale or unproven allegations, without any determination that the underlying conduct is "presently likely to be repeated," "do[es] not satisfy due process." *Id.* And where a detainee's alleged conduct was never adjudicated "following the full procedural protections our criminal justice system offers," continued detention premised on the underlying arrest lacks the neutral factfinding that due process demands. *Doe v. Moniz*, 800 F. Supp. 3d 203, 214 (D. Mass. 2025).  The "risk of erroneous deprivation" reaches its apex where detention "is based on an arrest for which no charges have been filed and the underlying conduct for which bears no relationship to dangerousness" *Id.* Due process "is not satisfied . . . by rubberstamp denials," and "grudging and perfunctory review is not enough." *Garcia*, 817 F. Supp. 3d at 121 (internal quotation marks omitted).  A danger finding premised on charges the prosecuting authority itself dismissed is the paradigm of a determination the record cannot support.

Detention also independently violates substantive due process when it does not "bear a reasonable relation" to a legitimate governmental purpose.  *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 641 (D. Mass. 2018) (citing *Demore v. Kim*, 538 U.S. 510, 527 (2003)).  The Government released Mr. Cesvette on parole after making an individualized determination that he posed neither a danger nor a flight risk. Pet. ¶ 3. Nothing in the intervening record—save the dismissal of all charges in his favor—has changed that calculus.  Moreover, an Immigration Judge is required to consider whether "alternatives to detention" can adequately address any perceived risk before ordering continued civil confinement.  *Brito*, 22 F.4th at 254.  Even if detention could survive substantive scrutiny, it must "result from a fair process"

affording "individualized procedures" to contest its basis; a denial resting on dismissed charges affords no such process. *Jimenez*, 317 F. Supp. 3d at 641. And the same is true here.

**B.      *The Denial Was Arbitrary and Capricious Under the Administrative Procedure Act.***

The APA independently requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious when the decisionmaker "entirely failed to consider an important aspect of the problem" or "offered an explanation . . . that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  The agency must articulate "a rational connection between the facts found and the choice made." *Id.* The bond denial fails that standard on its face.  The Immigration Judge treated Mr. Cesvette as a danger based on charges that had been dismissed—wholly ignoring the dispositive fact that the State abandoned those charges and that no court has ever found him culpable for the underlying conduct. See Certified Disposition, *State v. Cesvette*, No. F02B-CR25-0365581-S; Pet. ¶ 7 (Exhibit A). A dangerousness finding that runs directly counter to the dismissal of all charges, and that disregards the Government's own prior individualized determination that Mr. Cesvette merited release on parole, Pet. ¶ 3, reflects no "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Here, the connection is even more tenuous because it was the only criminal charges in evidence. Thus, the burden for Government was only a set of dismissed charges that the Immigration Judge refused to discount in contravention of the law in this district and judicial circuit.

III.    **BECAUSE THE BOND HEARING DID NOT COMPLY WITH THIS COURT'S JUDGMENT, THE APPROPRIATE REMEDY IS PETITIONER'S IMMEDIATE RELEASE.**

Where a court-ordered bond hearing fails to comply with the conditions of the writ, "no purpose—apart from unnecessarily extending [the petitioner's] detention—would be served by remanding . . . for another bond hearing," and immediate release is warranted. *Mathon*, 623 F. Supp. 3d at 213. So too here: because the evidence presented at the June 25 hearing "could not—as a matter of law—" support the dangerousness finding, a second hearing on the same record would be futile. *Id.* The fact that "some" risk may attend release does not bar the remedy. *Id.* Courts in this Circuit and in this District have ordered release in analogous circumstances. In *Garcia v. Hyde*, the court found a § 1226(a) bond hearing constitutionally inadequate and ordered the petitioner's immediate release rather than a further administrative proceeding. 817 F. Supp. 3d at 122. Courts in this District have done the same for previously paroled noncitizens whom the Government cannot lawfully detain. *See De Andrade v. Moniz*, 802 F. Supp. 3d 325, 332 (D. Mass. 2025) (ordering immediate release where no lawful detention authority was established); *Batista Santiago v. Hyde*, 814 F. Supp. 3d 186, 193 (D. Mass. 2026) (ordering respondents to "either release petitioner or provide . . . a constitutionally-adequate bond hearing"). The remedial structure this Court employed in its June 18 Judgment is well established throughout this District. *See also Romero-Nolasco v. McDonald*, 802 F. Supp. 3d 101, 108 (D. Mass. 2025); *Inlago Tocagon v. Moniz*, 802 F. Supp. 3d 93, 100 (D. Mass. 2025).

Should the Court decline to order outright release, it should conduct a de novo bond hearing, applying the burdens of proof established in *Hernandez-Lara v. Lyons*—clear and

convincing evidence of danger to the community, or a preponderance of the evidence of flight risk—and requiring the Government to consider alternatives to detention before imposing continued civil confinement.  *Hernandez-Lara*, 10 F.4th at 35; *Brito*, 22 F.4th at 254.  Any order of release should include the conditions requested in Petitioner's habeas petition, including release into Connecticut and the return of his documents and property. Pet. ¶ 75.

## **CONCLUSION**

For the foregoing reasons, Petitioner Emanuel Dangello Cesvette respectfully requests that this Court enforce its June 18, 2026, Judgment, hold that the Immigration Judge's bond denial failed to satisfy that Judgment and independently violated due process and the APA, and order Petitioner's immediate release from custody on appropriate conditions.  In the alternative, Petitioner requests that this Court conduct a de novo bond hearing applying the standards of proof required by *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), and *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021).

July 17, 2026

Respectfully submitted,

| | |
|---|---|
| */s/ Glenn L. Formica* | */s/ Janne Reisch.* |
| Glenn L. Formica, Esq | Janne Reisch, Esq. (MA Bar #693675) |
| The American Immigrant Law Clinic | Janne Reisch, Attorney at Law |
| (TAILC) | PO Box 3103 |
| 195 Church Street, Floor 11 | Westerly, RI 02891 |
| New Haven, Connecticut 06510 | Telephone: (401) 601-5272 |
| Telephone: (203) 787-1946 | attorneyreisch@gmail.com |
| glenn@tailcproject.org | *Cooperating counsel* |
| gformica@formicalaw.com | |
| *Pro Bono Counsel for Petitioner* | |

## LOCAL RULE 7.1(a)(2) CERTIFICATION

I, Glenn Formica, hereby certify that in accordance with Local Rule 7.1(a)(2), counsel for Petitioner and counsel for Respondents met and conferred in good faith on July 17, 2026, and counsel for Respondents objects to this motion.

Dated: July 17, 2026

By: */s/ Glenn L. Formica*

_____

Glenn L. Formica (admitted pro hac vice)
195 Church Street, Floor 11
New Haven, Connecticut 06510
Telephone: (203) 787-1946
gformica@formicalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Petitioner's Motion to Enforce the Court's June 18, 2026 Habeas Judgment and for Immediate Release, and the incorporated memorandum of law, was served by the Court's CM/ECF system on July 17, 2026, on all counsel of record, including Vincent Engingro III, Special Assistant United States Attorney, counsel for Respondents.

Dated: July 17, 2026

*/s/ Glenn L. Formica*

_____

Glenn L. Formica, Attorney