**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EMANUEL DANGELLO CESVETTE,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, DAVID WESLING, Acting Field Office Director, DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement, MARKWAYNE MULLIN, U.S. Secretary of Homeland Security, and TODD BLANCHE, Acting U.S. Attorney General,<br><br>Respondents. | Civil Action No. 26-CV-12662-AK |

**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Before the Court is Petitioner Emanuel Dangello Cesvette's ("Cesvette" or "Petitioner") Motion to Enforce the Court's June 18, 2026, Habeas Judgment and request for an Order for Immediate Release. [Dkt. 14]. Cesvette contends that the bond hearing this Court ordered, was not a constitutionally adequate hearing its judgment required, because the Immigration Judge ("IJ") found him to be a danger to the community based solely on criminal charges that had been dismissed a month earlier and on the hearsay allegations underlying them. [Dkt. 14 at 6]. Respondents oppose, arguing that the Court lacks jurisdiction, that Petitioner failed to exhaust his administrative remedies, and that the IJ correctly found Petitioner to be a danger to the community by clear and convincing evidence. [Dkt. 20].

For the reasons that follow, the Motion to Enforce is **GRANTED**, and Respondents are **ORDERED** to release Petitioner immediately.

## I. BACKGROUND

Cesvette is a Jamaican national who entered the United States on June 24, 2022, and was released on a grant of parole two days later. [See Dkt. 1 ¶¶ 3, 25]. He is married to a United States citizen, who has filed a Form I-130 petition for him, and he is the father of two United States citizen children. [Id. ¶¶ 2, 27]. Throughout his period of parole, Cesvette complied fully with every ICE reporting requirement. [Id. ¶ 5].

On November 22, 2025, the Bridgeport, Connecticut Police Department arrested Cesvette and charged him with assault in the third degree, disorderly conduct, and unlawful restraint in the second degree. [See Dkt. 15-1 at 117]. The police report alleged that he had assaulted his wife and had prevented her from calling the police by taking her phone and keys. [See Dkt. 20 at 3]. On February 19, 2026, ICE arrested Cesvette and served him with an arrest warrant and a notice terminating his parole. [Dkt. 1 ¶¶ 7, 11]. He has remained in custody at the Plymouth County Correctional Facility since that date. [Id.]. On May 20, 2026, the Connecticut Superior Court dismissed all criminal charges in their entirety. [See Dkt. 14 at 3]. Cesvette has no prior convictions and no pending criminal matters in any jurisdiction.

On June 18, 2026, the Court granted Cesvette's petition for a writ of habeas corpus, holding that his arrest and detention within the United States are governed by the discretionary framework of 8 U.S.C. § 1226(a) and that he is entitled to a bond hearing. [Dkt. 10]. The Court ordered Respondents to provide a § 1226(a) bond hearing within ten calendar days, enjoined them from denying bond on the ground that Cesvette is detained under § 1225(b)(2), and directed the filing of a status report. [Id.].

Respondents filed that status report on July 2, 2026, reporting that Petitioner had received a bond hearing and that the IJ had found him to be a danger to the community by clear and convincing evidence, with no alternative to detention sufficient to ensure community safety. [Dkt. 12]. On July 17, 2026, Petitioner filed the instant motion to enforce, arguing that the hearing Respondents provided did not comport with due process and therefore did not satisfy the Court's judgment. [Dkt. 14]. His central contention is that the sole basis for the dangerousness finding was a set of criminal charges dismissed more than a month before the hearing, and that a finding resting entirely on dismissed and unproven allegations cannot supply the constitutionally adequate § 1226(a) hearing the Court ordered. [Dkt. 14 at 2]. Respondents responded on July 31, 2026. [Dkt. 20].

## II. DISCUSSION

### A. The Court Has Subject Matter Jurisdiction

Respondents argue that 8 U.S.C. § 1226(e) strips the Court of jurisdiction to review the IJ's denial of bond under § 1226(a), and that Petitioner is in substance asking the Court to reweigh the evidence. Petitioner responds that the IJ misapplied the governing law and relied on evidence incapable of supporting her conclusion, thereby violating due process. Petitioner has the better of the argument: because he challenges the legality and constitutionality of the bond hearing itself, § 1226(e) does not bar review.

As this Court observed in Reyes Vargas v. Plymouth Correctional Facility, 2026 WL 1453510, at *3, and as other sessions of this District have recognized, a court may evaluate "whether the IJ adopted a constitutionally and legally adequate process in affording a bond hearing to Petitioner." See also Miti v. Moniz, 827 F. Supp. 3d 206, 211 (D. Mass. 2026) ("District courts retain habeas jurisdiction to ensure that immigration bond hearings are

conducted within constitutional bounds"); Dos Reis v. Vitello, 2025 WL 1043434, at *2 (D. Mass. 2025) ("[A] court may intervene where an immigration bail determination is *ultra vires* or facially unconstitutional"); Massingue v. Streeter, 19-CV-30159, 2020 WL 1866255, at *4 (D. Mass. 2020) (holding that district courts may assess whether an IJ's bond hearing complied with constitutionally mandated standards).

Petitioner's claims fall squarely within that scope. He contends that the IJ rested a clear-and-convincing dangerousness finding on hearsay statements in a police report and on charges dismissed a month before the hearing, and that she never addressed alternatives to detention. He argues that this evidence, as a matter of law, could not support the finding, rendering the decision arbitrary and capricious and violating due process. Those are challenges to the legality and constitutionality of the hearing, not requests to reweigh evidence. Review is therefore not barred by 8 U.S.C. § 1226(e).

### B. Petitioner Need Not Exhaust Administrative Remedies

Petitioner was not required to exhaust his remedies before the Board of Immigration Appeals ("BIA") before seeking review of his constitutional due process claims. As the Court explained in Reyes Vargas, Petitioner's liberty interests are at stake, and his detention under 8 U.S.C. § 1226(a) is discretionary and of no fixed duration. Exhaustion is not required in those circumstances.

Exhaustion would also be futile here. Petitioner challenges both the legality of his detention and the constitutional adequacy of the hearing the IJ conducted—questions the BIA lacks authority to adjudicate meaningfully. See Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 238 (W.D.N.Y. 2019) ("[T]he BIA does not have jurisdiction to adjudicate constitutional issues"). And "[a]llowing Petitioner's indefinite detention . . . especially when the legality of Petitioner's

detention and process to determine his custody is under challenge, would be a significant harm." Reyes Vargas, 2026 WL 1453510, at *5. Thus, Petitioner need not pursue BIA review before proceeding here.

**C. Standard of Review**

The Court's authority to review the IJ's custody determination is "limited." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019). The Court may not reweigh the evidence or second-guess the IJ's discretionary judgments. See 8 U.S.C. § 1226(e) ("discretionary judgment[s] regarding the application of [Section 1226] shall not be subject to review"); Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020) (quoting Arellano v. Sessions, No. 6:18-cv-06625-MAT, 2019 WL 3387210, at *7 (W.D.N.Y. July 26, 2019)) ("[A] district court sitting in habeas review . . . has no authority to encroach upon an IJ's discretionary weighing of the evidence."); Pensamiento v. McDonald, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Congress has eliminated judicial review of discretionary custody determinations."); Diaz Ortiz, 384 F. Supp. 3d at 144 (court lacks jurisdiction to review "immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness"). The Court must likewise remain "mindful of [its] obligation to afford . . . a degree of deference to the [factfinder's] determinations." United States v. Tortora, 922 F.2d 880, 882 (1st Cir. 1990).

Within those limits, however, the Court may assess whether a bond hearing comported with due process. See Massingue v. Streeter, No. 3:19-CV-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (weight of authority in this District confirms the court's jurisdiction to determine whether a bond hearing complied with constitutional standards). The inquiry is whether the IJ applied the correct legal standard. A petitioner may show that she did not by either (1) "point[ing] to the language of the immigration judge's opinion" or (2) "demonstrat[ing] that 'the

evidence itself could not — as a matter of law — have supported' the immigration judge's decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria, 358 F. Supp. 3d at 240). As to the first route, "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." Akinsanya v. Garland, 125 F.4th 287, 297 (1st Cir. 2025). As to the second, a petitioner must show that "under the circumstances, no reasonable immigration judge could have come to" the conclusion the IJ reached. Miti, 827 F. Supp. at 217. Petitioner invokes both routes here, pointing to the IJ's oral decision and to the evidentiary record.

The substantive standards the IJ was obligated to apply are well settled. At an immigration bond hearing in this Circuit, the government bears the burden of establishing that the noncitizen is either (1) dangerous, by clear and convincing evidence, or (2) a flight risk, by a preponderance of the evidence. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). In Hernandez-Lara the First Circuit held that due process places that burden on the government, not the petitioner, in hearings under 8 U.S.C. § 1226(a). Id. at 39.

The determination of dangerousness requires an IJ to consider multiple factors as set out in Matter of Guerra, and thus the IJ's application of dangerousness to Petitioner's facts is reviewable. See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) (quoting Wilkinson v. Garland, 601 U.S. 209, 221 (2024)) ("[A]pplication of the 'dangerousness' standard . . . [is] a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'"). Accordingly, the Court reviews the IJ's order to determine if it correctly applied the legal standards.

### D. Petitioner's Bond Hearing was Constitutionally Deficient

The Court has reviewed the audio recording of the bond hearing, [Dkt. 21], together with the documents the parties submitted to the IJ, [Dkt. 15-1]. Two defects, each independently

significant, render the hearing constitutionally inadequate: the dangerousness finding rested entirely on an arrest that was never adjudicated, and the IJ never considered whether any alternative to detention could address the risk she found.

At the hearing, Respondents argued that Petitioner posed a danger to the community based solely on his November 22, 2025, arrest and the charges that followed. Those charges were dismissed on May 20, 2026. There was no trial, no judicial findings, and no conviction.

Against that, Petitioner submitted roughly 110 pages of materials in support of release, including numerous statements from family and community members. [See Dkt. 15-1]. Among them were two letters from his wife — the alleged victim in the criminal complaint — supporting his release and asking to serve as his bond sponsor. [Id. at 62-63]. Further statements came from the mother of two of his United States citizen children, his church pastor, his employer, and his children's daycare providers and school. [Id. at 91-92, 95, 97, 99-100]. These letters uniformly attested to Petitioner's good character and affirmed that he poses no danger to the community. [See Dkt. 15-1].

Notwithstanding that record, and notwithstanding the dismissal of the charges more than a month before the hearing, the IJ found Petitioner dangerous by clear and convincing evidence. [Dkts. 15-1; 21 at 9:20–11:08]. That finding rested entirely on the dismissed charges and the hearsay allegations in the police report. Continued detention resting solely on an arrest never tested "following the full procedural protections our criminal justice system offers" lacks the neutral fact-finding that due process requires. Doe v. Moniz, 800 F. Supp. 3d 203, 216 (D. Mass. 2025). The "risk of erroneous deprivation" is at its height where detention "is based on an arrest for which no charges have been filed and the underlying conduct for which bears no relationship

to dangerousness." Doe, 800 F. Supp. at 216-217. That risk is no less acute where, as here, charges were filed and then ultimately dismissed without any adjudication of the underlying allegations.

The IJ also made no effort in her oral decision to evaluate whether alternatives to detention or other less restrictive means could address any danger Petitioner might pose—this despite a proposed bond sponsor and an extensive record bearing on conditions of release. That omission is itself a failure to apply the correct legal standard. As another judge in this district explained, "[i]n light of the heavy burden on the government to prove dangerousness by clear and convincing evidence, and the immigration court's failure to consider alternative conditions of release, Petitioner has adequately demonstrated prejudice." Vieira v. Moniz, No. CV 19-12577-PBS, 2020 WL 488552, at *4 (D. Mass. Jan. 30, 2020).

Courts in this District have found bond hearings constitutionally deficient on materially similar facts, where immigration judges failed to engage meaningfully with a petitioner's evidence. See, e.g., Mijango Velasco v. Wesling, No. 26-cv-11355-LTS (D. Mass. Apr. 24, 2026), ECF No. 19 (no meaningful consideration of voluminous bond evidence); Rogerio Ramos v. Moniz, No. 26-cv-11388-LTS (D. Mass. Apr. 27, 2026), ECF No. 19 (same). The same reasoning governs here. The IJ failed to apply the correct legal standard, and Petitioner's bond hearing did not satisfy due process.

## III. REMEDY

Having concluded that Petitioner was not afforded a constitutionally adequate bond hearing, the Court turns to remedy. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Federal courts retain wide discretion in fashioning that relief. See United States v. Torres-Otero, 232 F.3d 24, 30 (1st

Cir. 2000) (in the § 2255 context, the "remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy"); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief.").

Where a petitioner does not pose a danger to the community, or has been unlawfully determined to be a flight risk, courts regularly order immediate release. See, e.g., Miti, 827 F. Supp.3d 206; Garcia v. Hyde, 817 F. Supp. 3d 112, 130 (D.R.I. 2025); Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1082 (W.D. Wash. 2026); W.T.M. v. Bondi, 25-CV-02428, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026); Miri v. Bondi, No. 26-CV-00698, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026).

Immediate release is warranted here. The hearing Respondents provided was legally deficient and did not meet the requirements of due process, and Respondents therefore did not comply with this Court's prior order, [Dkt. 10], which required a bond hearing consistent with § 1226 and due process. Petitioner has now been detained for over six months—a detention prolonged by the violation of his due process rights. On this record, there is no basis for his continued detention.

## IV. CONCLUSION

For the foregoing reasons, the Petitioner's Motion to Enforce [Dkt. 14] is **GRANTED**. The Respondents are **ORDERED** to release the Petitioner immediately.

**SO ORDERED.**

Dated: August 25, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge